Cassie Springer-Sullivan - Cal. Bar No. 221506
Teresa S. Renaker – Cal Bar No. 187800
LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA 94612
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
Email:
cssullivan@lewisfeinberg.com
trenaker@lewisfeinberg.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L. DORETTA KERL,<br><br>    Plaintiff,<br><br>vs.<br><br>AT&T UMBRELLA BENEFIT PLAN NO. 1,<br><br>    Defendant. | Case No. C08-00970<br><br>**COMPLAINT (ERISA)** |

## JURISDICTION

1. Plaintiff brings this action for declaratory, injunctive, and monetary relief pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 28 U.S.C. § 1331.

## VENUE

2. Venue lies in the Northern District of California pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the ERISA-governed plan at issue was administered in part in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

## INTRADISTRICT ASSIGNMENT

3. This action should be assigned to the San Francisco or Oakland Division because this action arises in Contra Costa County in that some of the plan administration and some of the breaches alleged took place in Contra Costa County.

## PARTIES

4. At all relevant times, Plaintiff L. Doretta Kerl ("Ms. Kerl" or "Plaintiff") was a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in Defendant AT&T Umbrella Benefit Plan No. 1 ("Plan" or "Defendant"); on information and belief, Pacific Telesis Group Comprehensive Disability Benefits Plan is the program within the Plan in which Ms. Kerl participated.

5. At all relevant times, the Plan was an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), sponsored by Ms. Kerl's employer, AT&T Inc. and its corporate predecessors and successors, including SBC Communications Inc. (collectively, "AT&T"). At all relevant times, the Plan provided, *inter alia*, short-term disability benefits to employees, including Plaintiff, funded by the assets of participating companies, including Plaintiff's employer, AT&T. At all relevant times, Ms. Kerl worked in the San Ramon, California office of AT&T, which is located in Contra Costa County.

## FACTS

6. From January 14, 1982 until August 24, 2006, Ms. Kerl worked for AT&T in Contra Costa County, California.

7. While employed by AT&T, Ms. Kerl worked full-time as a service representative. In this position, she assisted customers with bills and placed customer orders.

8. In late 2005, Ms. Kerl began medical treatment for osteoarthritis in her knees and hips, conditions that were causing her increasing levels of pain.

9. By August 2006, Ms. Kerl's physician, Dr. Gautami Agastya, determined that Ms. Kerl's symptoms were progressing and that her pain was severe, constant, and disabling. He restricted her to walking no more than one block at a time, and to sitting less than 30-40 minutes at a time. Dr. Agastya ordered that Ms. Kerl discontinue work, which she did as of August 24,

2006. He determined that following weight loss surgery, Ms. Kerl would receive a left hip replacement and a knee replacement.

10. After leaving work, Ms. Kerl applied for short-term disability benefits under the Plan, which was acknowledged by the Plan by letter dated September 1, 2006.

11. By letter dated October 2, 2006, Patricial Walker, Disability Specialist with the AT&T Integrated Disability Service Center, denied Ms. Kerl's request for benefits, stating that "[s]ubjective pain without significant positive objective findings does not justify time off from work."

12. Patricial Walker did not explain why Dr. Agastya's determination that Ms. Kerl would need knee and hip replacement surgeries were not sufficient findings to support an award of benefits.

13. Thereafter, Ms. Kerl submitted an administrative appeal of the decision to deny her benefits, which Jose Perez of the AT&T Integrated Disability Service Center (IDSC) Quality Review Unit, acknowledged by letter dated November 17, 2006.

14. In her appeal, Ms. Kerl stated that she was unable to work due to chronic pain, that she uses a can to assist in walking, and that she has trouble sitting, standing, and performing activities of daily living. She noted that the medications she took to reduce the swelling in her knees and feet caused increased urination, but due to her difficulty in getting up and in walking, while at work it was difficult to get to the restroom in time to relieve herself.

15. In support of her appeal, Ms. Kerl and her medical providers submitted several records, documents, and statements concerning her diagnoses, restrictions, and limitations. These included: a September 22, 2005 MRI of her left hip showing destructive process in the superior and medial aspect of the femoral head and a large left hip joint effusion; a June 27, 2005 x-ray of her right knee showing osteoarthritic changes manifested by joint space narrowing and spurs in the medial and femoral patellar compartment; and a June 27, 2005 pelvis and left hip x-ray showing a "severe deformity" in the left hip and degenerative changes in the lower lumbar spine. Ms. Kerl also submitted a November 16, 2006 physician's statement from Dr. Agastya noting observed clinical findings of pain on internal-external rotation of left hip, swelling, joint

tenderness, and bilateral knee crepitance (audible cracking); outlining functional restrictions in sitting, standing, stooping, crouching, climbing, and bending; and indicating that the left hip replacement would occur after weight loss surgery. Ms. Kerl also submitted a November 30, 2006 statement from Dr. Agastya stating that Ms. Kerl is unable to work due to difficulty in going from a sitting to a standing position, due to "constant chronic pain," and because her diuretics make it difficult for her to make it to a restroom at work.

16. While awaiting a decision on the appeal of the denial of her claim for benefits, Ms. Kerl's faced a possible home because she had not been receiving an income or disability benefits since leaving work in August 2006.

17. By letter dated December 29, 2006, Joan Winston for Joan Krouskoupf of the AT&T Integrated Disability Service Center (IDSC) Quality Review Unit upheld the previous decision to deny Ms. Kerl's benefits. Ms. Winston stated that it reviewed information from Dr. Kuldeep Sidhu, Dr. Agastya, Dr. John Frasier, Dr. George Kazantsev, Dr. Saral Verma, Dr. Sam Kokoris, and Sutter Tracy Community Hospital, but did not state what its conclusions were from its review of this information. Ms. Winston stated that independent physician advisor Michael Chmell, M.D., indicated that there was a lack of evidence to support disability. Ms. Winston further stated that "[a]lthough some findings are referenced, none are documented to be so severe as to prevent you from performing the job duties of a Service Representative." Ms. Winston offered no further explanation for why all of the findings documented in Ms. Kerl's extensive medical records were being rejected.

18. In the December 19, 2006 evaluation from Dr. Chmell submitted to the Plan, Dr. Chmell stated that "Ms. Kerl has objectively documented osteoarthritis of the left hip and both of her knees." He nonetheless concluded that her end-stage arthritis of the left hip and both knees would not impair her ability to work because her job was sedentary. He did not address the effect of pain on her ability to work even in a sedentary job.

19. Prior to her disability, Ms. Kerl was earning approximately $27.00 per hour. Due to the denial of her claim for benefits, Ms. Kerl was left without an income and without medical benefits. She was also scheduled to have gastric bypass surgery in anticipation of her knee and

hip replacement surgeries. Therefore, on January 17, 2007, contrary to her doctors' recommendations, Ms. Kerl returned to work at AT&T for just over three months until retiring on May 4, 2007. During that time, she suffered from attendance problems at work due to her medical conditions, resulting in a one-day unpaid suspension on April 18 with the instruction from her employer to contemplate the following: "What can you do differently that will help to maintain good health and improve your attendance status?"

20.     As a result of not receiving an income due to the denial of her disability benefits, Ms. Kerl filed for bankruptcy on March 15, 2007, which has negatively affected her credit score and has inhibited her ability to refinance her home. Also as a result of the Plan's failure to pay Ms. Kerl's benefits, her seniority date with AT&T changed from January 14, 1982 to April 30, 1982, which lessened the amount of her pension when she retired. Once she retired, she was forced to use part of her lump sum pension payment to save her house by paying $20,000 in back mortgage and $10,000 in back taxes.

21.     Between August 25, 2006, and January 17, 2006, due to her medical conditions, Ms. Kerl was disabled and entitled to benefits under the Plan. Accordingly, Ms. Kerl is entitled to STD benefits under the terms of the Plan for this period.

## FIRST CLAIM FOR RELIEF
[Claim for Benefits Pursuant to § 502(a)(1)(B) Against Defendant Plan]

22.     Plaintiff incorporates Paragraphs 1 through 21 as though fully set forth herein.

23.     ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to her under the terms of a plan, to enforce her rights under the terms of a plan, and/or to clarify her rights to future benefits under the terms of a plan.

24.     From August 25, 2006 to January 17, 2007, Ms. Kerl was entitled to STD benefits under the Plan. By denying Ms. Kerl's claim for STD benefits under the Plan, the Plan has violated the terms of the Plan and Ms. Kerl's rights thereunder.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant the following relief:

**AS TO THE FIRST CLAIM FOR RELIEF:**

A. Declare that Defendant Plan violated the terms of the Plan by denying Ms. Kerl's claim for short-term disability benefits from August 25, 2006 to January 17, 2007;

B. Order Defendant Plan to pay short-term disability benefits to Plaintiff pursuant to the terms of the Plan from August 25, 2006 to January 17, 2007, together with prejudgment interest on each and every such monthly payment through the date judgment is entered herein;

C. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

D. Provide such other relief as the Court deems equitable and just.

Dated: February 15, 2008

Respectfully submitted,

LEWIS, FEINBERG, LEE,
RENAKER & JACKSON P.C.

By: *[signature]*
Cassie Springer-Sullivan
Attorney for Plaintiff